IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

01 FEB 12 AM 11: 31

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY DEE PFANNENSTIEL; | ) | CIVIL NO. 98-0117-BB |
| ET AL., | ) | |
| | ) | |
| Defendants | ) | |

UNITED STATES PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

1.      The United States commenced this action to reduce to judgment certain individual federal

income tax assessments made against Jay Dee Pfannenstiel for the years 1983, 1984, 1985, 1986,

1987, and 1988 (Count I) and to foreclose federal tax liens (Count II), encumbering Jay Dee

Pfannenstiel's interest in certain real property located in McKinley County, New Mexico, commonly

known as 209 Dee Ann Street, Gallup, New Mexico 87301, currently held in the name of Golden

Growth Enterprises Company, and described as follows:

> Legal Description:  Lot Three (3) of the Subdivision of Tract Three (3), Rolling Hills Unit 6
> Annexation, as the same is shown and designated on the map of said Subdivision, filed in the
> Office of the County Clerk of McKinley County, New Mexico, on August 18, 1982.

2.      Mr. Pfannenstiel filed his last tax return for tax year 1982.  He has not filed a return since filing

his 1982 income tax return.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd



3.      On May 4, 1992, as evidenced by the Certified Transcripts of Assessments and Payments for

the taxable years 1983, 1984, 1985, 1986, 1987, and 1988, a delegate of the of the Secretary of the

Treasury made the following quick assessments against Jay Dee Pfannenstiel (See Gov. Exh.28)(See

also Gov. Exhibits 63 and 60,  Form 23C for May 4, 1992 and Input Reconciliation Sheet for 23 C on

050492) (See also Gov. Exh.62, IMF MCC):

| Tax Type | Period Ended | Quick Assessment Date | Tax | Penalties | Interest |
|------|------|------|------|------|------|
| 1040 | 12-31-83 | 5-4-92 | $ 4,420.00 | $ 4,555.76 | $ 7,371.90 |
| 1040 | 12-31-84 | 5-4-92 | 4,849.00 | 4,375.53 | 2,859.53 |
| 1040 | 12-31-85 | 5-4-92 | 5,112.00 | 4,026.75 | 5,499.36 |
| 1040 | 12-31-86 | 5-4-92 | 5,388.00 | 3,753.62 | 4,694.07 |
| 1040 | 12-31-87 | 5-4-92 | 4,907.00 | 3,059.10 | 3,302.85 |
| 1040 | 12-31-88 | 5-4-92 | 5,138.00 | 1,870.00 | 2,468.29 |

4.      Notice of and demand for payment of the assessments were mailed to Jay Dee Pfannenstiel on

May 4, 1992 (See Gov. Exh.28)(See also Gov. Exhibits 61 and 64, Request for Quick Assessment and

Prompt Assessment Billing Assembly) ) (See also Gov. Exh. 62, IMF MCC).  Mr. Pfannenstiel returned

the notice to the I.R.S. complaining that the envelope was incorrectly addressed because it used a zip code.

See Gov. Exh.11.

5.      The unpaid assessments continue to accrue statutory interest and applicable penalties.  As a result,

the approximate unpaid federal income tax liability of Jay Dee Pfannenstiel, determined as of September

15, 1997, for the taxable years listed in paragraph above, including statutory interest and applicable

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

penalties, which continue to accrue, is set forth below:

| Taxable Year | Balance Owing |
|---|---|
| 1983 | $ 26,408.68 |
| 1984 | $ 25,727.26 |
| 1985 | $ 24,036.27 |
| 1986 | $ 22,857.71 |
| 1987 | $ 18,746.87 |
| 1988 | $ 16,171.04 |
| Total | $133,947.83 |

6.      Since Defendant Jay Dee Pfannenstiel has neglected, refused, and failed to fully satisfy the liabilities

listed in paragraph 14, despite notice and demand for payment, the United States is entitled to a judgment

for the $133,947.83 as of September 15, 1997, plus interest as allowed by law for tax liabilities from

September 15, 1997, until paid.

7.      By virtue of 26 U.S.C. § 6321, the tax assessments, the notice and demand for payment, and

Defendant Jay Dee Pfannenstiel's refusal to pay the federal income tax liabilities in issue, created a lien

in favor of the United States upon all property and rights to property belonging to Jay Dee Pfannenstiel

pursuant to 26 U.S.C. § 6321.

8.      Notices of Federal Tax Lien  incident to the above-referenced assessments were filed against

Jaye Dee Pfannenstiel (Gov. Exh.1):

| Date | Location |
|---|---|
| 12/21/92 | McKinley County Clerk, Gallup, New Mexico |

9.      In addition,  a Notice of Federal Tax Lien, incident to the above-referenced assessments, was

also filed against Golden Growth Enterprises Co "As Nominee For" Jay Dee Pfannenstiel" as follows:

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

| Date | Location |
|------|----------|
| 4/28/94 | McKinley County Clerk, Gallup, New Mexico |

10.     The United States is seeking to foreclose its federal tax liens for the payment of Mr.

Pfannenstiel's 1983 through 1988 tax liabilities on real property in McKinley County New Mexico,

commonly known as 209 Dee Ann Street, Gallup, New Mexico 87301, ("the property") currently held

in the name of Golden Growth Enterprises Company, and more particularly described as follows:

> Legal Description: Lot Three (3) of the Subdivision of Tract Three (3), Rolling Hills Unit 6
> Annexation, as the same is shown and designated on the map of said Subdivision, filed in the
> Office of the County Clerk of McKinley County, New Mexico, on August 18, 1982.

11.     On December 15, 1977 Jay Dee Pfannenstiel and his mother Eleanor Pfannenstiel executed a

Real Estate Mortgage on the property to Gallup Federal Savings & Loan Association. See Gov.

Exh.2.

12.     On March 16, 1983, Eleanor Pfannenstiel conveyed the property by warranty deed to her son,

Jay Dee Pfannenstiel.

13.     On June 15, 1984, Jay Dee Pfannenstiel conveyed the property by warranty deed to Lori

Herrera.

14.     On February 27, 1985, Lori Herrera Silva (married name) conveyed the property  by warranty

deed to Golden Growth Enterprises Company.   Defendant Lori Silva was dismissed from this action

by order entered April 28, 1998.  See Docket Entry 8.

15.     On May 11, 1988,  Gallup Federal Savings & Loan Association released the mortgage

executed on December 15, 1977. Gov. Exh.3.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

16.     Defendant Western Bank of Gallup has a judgment against Mr. Pfannenstiel which may create and interest in the property.  Defendant Western Bank was dismissed by order entered September 21, 1998.  See Docket Entry 28.

17.     Defendant  McKinley County was joined to this action because it might have had a tax lien against the property.  The Defendant, McKinley County (also known in this action as Treasurer, McKinley County, New Mexico, and Tax Assessor, McKinley County) was dismissed by order entered September 10, 1998 from further participation in this action. See Docket Entry 21.

19.     McKinley County Defendants do not have any liens for real property taxes which arose before 1997, which are superior to the tax liens claimed by the United States in this action.  Any tax liens of McKinley County for real property taxes arising during or after 1997 have priority over the United States tax liens claimed in this action.  See Docket Entry 21.

20.     The State of New Mexico has filed tax liens which may attach to the property.  They have agreed to disclaim any interest in the property.

21.     Jay Dee Pfannenstiel signed for the paid note and the release of mortgage at Gallup Federal Savings & Loan Association.  See Gov. Exhibit 5.

22.     Records of  Gallup Federal Savings & Loan Association show that most payments after 1986 were made in cash.  See Gov. Exh.5.  A few of the payments were from checks listing as Payee Zuni Self Storage or Jay Dee Rentals.  The checks were endorsed by Mr. Pfannenstiel.  See Gov. Exh.4.

23.     Blank

24.     Blank

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

25.    Blank

26.    The United States served Golden Growth Enterprises by serving Mr. Pfannenstiel.

27.    Golden Growth Enterprises lists its address in the Turk and Caicos Island.   The New Mexico Secretary of State attempted service on Golden Growth Enterprises in the Turks and Caicos Islands but it was returned undeliverable.  See Gov. Exh. 82.

28.    Mr. Pfannenstiel drives a truck  registered in the name of Golden Growth Enterprises.  Its tax address in the same as Mr. Pfannenstiel's and the property's.

29.    The deposition of Lori Silva was taken on November 3, 1998.  Lori Silva is the former Ms. Lori Herrera.  She has been married to Mr. Silva since 1990.   Silva Deposition, P. 6, L. 10-23.

30.    Lori Silva does not remember ever receiving the property.  She does not recall signing the warranty deeds.  Silva Deposition, P. 7,  L. 3-13.

31.    Lori Silva testified that she has known Mr. Pfannenstiel for about 15 years.  She met him through an ex-boyfriend, Walter Cergnul.  Silva Depo. P. 8, L. 13-23.   She started dating Mr. Cergnul in December 1983 and that would have been the earliest she met Mr. Pfannenstiel.  She dated Mr. Cergnul about two or three years.  That is when she met Mr. Pfannenstiel.  Silva depo. P. 16, L. 11-22.

32.    Lori Silva did some typing for Mr. Pfannenstiel and Mr. Cergnul.  Depo. P. 9, L. 24-25.  She was working for an attorney, Ron Grenko, at the time and Mr. Grenko was helping Mr. Pfannenstiel and Mr. Cergnul  with some paperwork.   To save money Mr. Cergnul asked Mrs. Silva to do some typing.  Silva Depo. P. 10.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

33.     No one ever asked her to put the property in her name.  She heard about it from her sister. Silva Depo. P. 11, L. 11-24.

34.     Mrs. Silva testified that Mr. Pfannenstiel has storage units and he rents them out.  She has been over at his property during an auction.  Silva Depo. P. 15, L. 18-22.

35.     Mrs. Silva believes she first heard the name Golden Growth when Mr. Cergnul and Mr. Pfannenstiel were talking.   Silva Depo. P. 18, L. 12-13.

36.     It was Mrs. Silva understanding that Jay Dee Pfannenstiel owned the property at 209 Dee Ann Street and managed the storage business on the property.  Silva Depo. P. 23, L. 2-5.    Mr. Pfannenstiel drove a truck which had Zuni Self Storage on the side.  Depo. P. 24, L. 4-5

37.     On February 14, 1985, Jay Dee Pfannenstiel executed a Vow of Poverty.  He claims to be a pauper.  This document was given to Gallup City Court.  Gov. Exh.12.

38.     On March 3, 1986, Mr. Pfannenstiel filed a forma pauperis affidavit claiming to have no money and no real estate, stocks or bonds.  He lists his address as 209 Dee Ann Street.  See Gov. Exh.13.

39.     Mr. Pfannenstiel has renounced various items issued, including his social security number and driver's license.  See Gov. Exhibits 14-20.

40.     Notwithstanding these purported transfers of the realty in question, Jay Dee Pfannenstiel continues to reside on and enjoys the beneficial use of the property.

41.     Blank

42.     Ms. Gregoria Archuleta was a deputy treasurer for McKinley County New Mexico.  She worked for the County for about 5 years, starting in 1992 or 1993.  Archuleta Depo. P. 5, L. 5-14.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

43.     She has known Mr. Pfannenstiel for more than five years.  Archuleta Depo., p. 6, L. 16 - 17.

44.     If she is the one who collected the tax payments she initialed the tax books when the taxes are paid.  Archuleta Depo. P. 6, L. 4-8.

45.     She initialed the tax book for the tax payment made on 12/10/93 for the 1993 tax bill of Golden Growth Enterprises Company on 209 Dee Ann Street.   See Gov. Exh. 31, P. 12 and Archuleta Depo. P. 8, L. 3.  She remembers that Mr. Pfannenstiel paid the taxes with cash.  Archuleta Depo. P. 8, L. 10-18.  She is absolutely sure it was Mr. Pfannenstiel.  Archuleta Depo. P. 13, L. 7-9.

46.     Mr. Pfannenstiel also paid cash for the taxes on the mobile home located at 209 Dee Ann Street.  See Gov. Exh.32, P. 11, Archuleta Depo., P. 9, L. 13 to P. 11, L. 15.

47.     County Appraiser Samual Sandoval visited Zuni Self Storage at 209 Dee Ann Street after May 1984.  Sandoval Depo. P. 14, L. 5.  Mr. Pfannenstiel gave Mr. Sandoval permission to inspect the property.  There were several buildings of self storage.    Sandoval Depo. P. 15, L. 9-11.  Mr. Sandoval remembers talking to Mr. Pfannenstiel during the visit because he mentioned he thought property taxes were illegal.  Sandoval Depo. P. 16, L. 9 to P. 17, L. 2.   They only inspected Zuni Self Storage because Mr. Pfannenstiel had obtained a construction permit on the building.  Sandoval Depo. P. 10, L. 19-21.  Mr. Pfannenstiel brought to Mr. Sandoval's attention a sign on the property which stated something to the effect that if you were a government official you should not be on the property. Sandoval Depo. P. 29, L. 16-24.

48.     On January 5, 1989, a complaint was filed by numerous Plaintiffs against the County of McKinley, New Mexico.  The Plaintiffs identified themselves as owners of real property in McKinley

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

County and were complaining of ad valorem taxes.  Listed as Plaintiff 215 was Jay D. Pfannenstiel.  He

listed himself as Plaintiff in the law suit concerning 209 Dee Ann Street, although the tax bill attached to

the complaint identified Golden Growth Enterprises Company as owners of the property at 209 Dee

Ann Street and Golden Growth Enterprises Company, Trustee as owners of the mobile home located

at 209 Dee Ann Street.   See Gov. Exh. 35 and 35(a).   Ortega Deposition, P. 15, L. 1 to L. 24.  Ms.

Ortega does not know why Pfannenstiel was the Plaintiff when he was not listed as the owner of the

property.  Ortega Depo, P. 16, L. 24.

49.     Golden Growth Enterprises Company, lacking legal substance or significance, serves merely as

the nominee for Jay Dee Pfannenstiel and that Jay Dee Pfannenstiel is the true owner of the above-

described property.

50.     Golden Growth Enterprises Company was served by serving Mr. Pfannenstiel.

51.     The conveyance from Jay Dee Pfannenstiel to Lori Herrera Silva and from Lori Herrera Silva

to Golden Growth Enterprises Company were without fair consideration or reasonable equivalent

value.

52.     The United States was a creditor of Jay Dee Pfannenstiel at the time of the conveyances to Lori

Silva and Golden Growth Enterprises Company for income taxes for 1983 -1988.

53.     The United States interest in the property is superior to any interest held by Golden Growth

Enterprises Company, Lori Silva, Jay Dee Pfannenstiel, the State of New Mexico or Western Bank of

Gallup.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

54.     Judgment will be entered in favor of the United States  against Jay Dee Pfannenstiel in the

amount of at least $133,947.83 as of September 15, 1997,  plus interest as allowed by law for tax

liabilities from September 15, 1997,  until paid,  for federal individual income taxes for 1983, 1984,

1985, 1986, 1987 and 1988.

55.     Judgment will be entered ordering the property sold as allowed by law and the proceeds paid

first to any outstanding property tax liabilities owned McKinley County, New Mexico and then to the

United States for the Mr. Pfannenstiel's outstanding income tax liabilities for years 1983 through 1988.

56.     Any proposed finding of fact that is more properly deemed a conclusion of law is hereby

adopted as such.

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

CONCLUSIONS OF LAW

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1340 and 1345, and I.R.C. §§ 7402 and 7403.

2.      Venue of this action properly lies in this district under 28 U.S.C. §§ 1391(b) and 1396.

3.      Forms 4340 are prima facie evidence of assessment and that notice and demand were made. GM Leasing Corp. v. United States, 514 F.2d 935, 941 U.S. (10th Cir. 1975), reversed in part on other grounds, 429 U.S. 228 (1977).   A presumption of correctness attaches to assessments as detailed in the Form 4340.  See Guthrie v. Sawyer, 970 F.2d 733 (10th. Cir. 1992).  Thus the Government established its prima facie case by offering into evidence the certification of the IRS assessments.  Sadowski v. United States, 687 F. Supp. 966, 972 (E.D.Pa.1988).

4.      The burden of persuasion lies  with defendant Pfannenstiel.  That is, Pfannenstiel has to prove that the Government's assessments are wrong.  Welch v. Helvering, 290 U.S. 111, 115 (1933); Higginbotham v. United States, 556 F.2d 1173, 1175 (4th Cir. 1977);  Psaty v. United States, 442 F.2d 1154, 1160 (3rd. Cir. 1971);  United States v. Eshelman, 663 F. Supp. 285, 287 (D. Del. 1987).

5..     Pursuant to Title 26, United States Code, Sections 6321 and 6322, liens arose in favor of the plaintiff, United States of America, against all property and rights to property, whether real or personal, belonging to the taxpayers as of the dates of assessments described above, or acquired thereafter.

5. .    Former N.M. Stat. Ann. § 56-10-9 (part of the Uniform Fraudulent Conveyance Act (N.M. Stat. Ann. §§ 56-10-1 through 56-10-13), repealed on June 16, 1989) and current N.M. Stat. Ann. §

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

56-10-21 (part of the Uniform Fraudulent Transfer Act (N.M. Stat. Ann. §§ 56-10-14 through 56-10-

25) provide that a creditor may set aside a fraudulent transfer to the extent necessary to satisfy a

creditor's claim.

6.    At the time of the purported transfers to Lori Silva and Golden Growth Enterprises Company,

Mr. Pfannenstiel was already indebted to the IRS for his unpaid 1983-1988 income taxes, although the

taxes for those years had not yet been assessed.  For example, if someone files an inaccurate return and

reports a tax-liability of $1,000.00, when their actual liability is $10,000.00, their debt to the IRS is

$10,000.00, and not $1,000.00.  The debt to the IRS arises at the close of the previous calendar year,

although it may not be fully due until the next April 15th.  The income taxes owed by Pfannenstiel relate

back to the due date of the 1983-1988 income tax returns.  Accordingly, he became indebted to the

Internal Revenue Service as of April 15, 1984 through April 15, 1989 respectively.  See <u>United States</u>

<u>v. Northwestern Mutual Insurance Co.</u>, 315 F.2d 723 (9th Cir. 1963).

7.    In  <u>United States v. 58th Street Plaza Theatre, Inc.</u>, 287 F. Supp. 475 (S.D. N.Y. 1968), the

court held that tax liabilities assessed at a later time are considered in determining the taxpayers'

insolvency during the earlier years to which their tax liabilities are attributed.  The court stated:

> This rule is logical and fair. Proposed tax deficiencies may be protested
> by petition to the Tax Court and, in such instances, assessment, levy or
> collection of the proposed deficiency is prohibited until the matter is
> decided by the Tax Court.  Moreover, even in the normal course of
> events, the government has no knowledge of a taxpayer's transactions
> until a return is filed, three and a half months after the taxable year ends.
> The government cannot possibly audit millions of returns immediately.
> To permit taxpayers to manipulate assets during the pendency of tax
> court proceedings and shield themselves from transferee liability merely

> because the transfers were made prior to the final decision would be
> manifestly unjust.

58th Street Plaza Theatre, Inc., 287 F. Supp. at 501.


8.    It is clear that no consideration was given for the transfer of the property to Lori Silva or Golden

Growth Enterprises. It is also clear that Mr. Pfannenstiel was rendered insolvent by the transfers and

thus the transfers of the Properties were a *per se* violation of Section 56-10-4 of the New Mexico

Uniform Fraudulent Conveyance Act and should be set aside.

9.    The transfer of the property to Lori Silva and Golden Growth Enterprises Company is also void

under Section 56-10-7 of the New Mexico Uniform Fraudulent Conveyance Act. Section 56-10-7

provided as follows:

> Every conveyance made and every obligation incurred with actual
> intent, as distinguished from intent presumed in law, to hinder, delay or
> defraud either present or future creditors, is fraudulent as to both
> present and future creditors.

10.    If there is an intent to hinder or delay, the conveyance is fraudulent even if the grantor is solvent

and receives a fair consideration. Pursuant to the Act, intent at the time of the conveyance is the

significant element. Roland v. United States, 838 F.2d 1400, 1402 (5th Cir. 1988); United States v.

Chapman, 756 F.2d 1237, 1242 (5th Cir. 1985).

11.    However, since direct proof of intent to defraud is not normally available, courts may rely on

circumstantial evidence to establish the fraudulent intent. Western Production Credit Ass'n v. Kear,

104 N.M. 494 723 P.2d 965 (N.M. 1986). In *Kear*, the court stated that the following elements are

commonly accepted badges of fraud:

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

| | |
|---|---|
| 1) | lack of fair consideration; |
| 2) | retention of possession of the property by the grantors; |
| 3) | the close relationship between the transferors and transferees; and |
| 4) | the threat or pendency of legal action. |

Id. at 966.

12.    Several factors are to be considered in determining actual intent:

whether,

| | |
|---|---|
| 1) | the transfer or obligation was to an insider; |
| 2) | the debtor retained possession or control of the property transferred after the transfer; |
| 3) | the transfer or obligation was disclosed or concealed; |
| 4) | before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit; |
| 5) | the transfer was of substantially all of the debtor's assets; |
| 6) | the debtor absconded; |
| 7) | the debtor removed or concealed assets; |
| 8) | the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; |
| 9) | the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; |
| 10) | the transfer occurred shortly before or shortly after a substantial debt was incurred; and |
| 11) | the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. |

See N.M. Stat. Ann. § 56-10-18B (1991).

13.    Not all the above-referenced indicia of fraud need be present to serve as a basis for an

inference of fraud. Dona Ana Savings and Loan Assoc. v. Dofflemeyer, 855 P.2d 1054, 1057 (N.M.

1993); and In re: Taylor, 133 F.3d 1336, 1339 (10th Cir. 1998).

14.   A debt for federal taxes is deemed to arise at the time the tax return is due.  It is of no import that the tax liability assessments were not made until after a subject conveyance considered to be fraudulent. See United States v. Voorhies, 658 F.2d 710 (9th Cir. 1981).

15.   In G.M. Leasing Corp. v. United States, 514 F.2d 935 (10th Cir.1975), *reversed in part on other grounds*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Internal Revenue Service seized automobiles belonging to the company in order to satisfy the tax liabilities of the sole owner of the corporation.  The I.R.S. determined that the corporation was the alter ego of the individual.  The Court of Appeals agreed because:  1) taxpayer exerted substantial, if not exclusive, control over the company;  2) other directors were only figureheads and made no decisions;  3) the taxpayer transferred personal property to company for no consideration;  4) the taxpayer used corporate property (cars) in his individual business;  5) the taxpayer purchased car in corporate name and allowed wife to personally use it.

16.   In Loving Saviour Church v. United States, et. al., 556 F.Supp. 688  (D. S. Dak, Feb. 9, 1993), it was considered for fraudulent conveyance purposes whether property held in the name of a church was really property held by the taxpayers that could be levied upon for the taxpayers unpaid tax liabilities.

17.   Rule 70 of the Federal Rules of Civil Procedure provides in part that "if real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law."

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

18.    Any conclusion of law more properly deemed a finding of fact is here by adopted as such.

Respectfully submitted,

JOHN J. KELLY
United States Attorney

JOSEPH A. PITZINGER, III
Attorney, Tax Division
Texas Bar No. 16055800
Department of Justice
Maxus Energy Tower
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9728
(214) 880-9741 (FAX)

ATTORNEYS FOR THE UNITED STATES

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY DEE PFANNENSTIEL; | ) | CIVIL NO. 98-0117-BB |
| ET AL., | ) | |
| | ) | |
| Defendants | ) | |

CERTIFICATE OF SERVICE OF
UNITED STATES PROPOSED FINDINGS AND CONCLUSIONS

IT IS HEREBY CERTIFIED that service of United States' Proposed Findings and

Conclusions has been made on this 9th. day of February 2001 by mailing a copy thereof to:

Jay Dee Pfannenstiel
209 De Ann Street
Gallup, New Mexico 87301-5721.

JOSEPH A. PITZINGER, III
Attorney, Tax Division
Texas Bar No. 16055800
Department of Justice
Maxus Energy Tower
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9728
(214) 880-9741 (Facsimile)

ATTORNEY FOR UNITED STATES

17–

D:\USERS\jpitzing\pfannens\trial\findingsFeb9.wpd