IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CIV. 98-117 BB/DJS |
| ) | |
| v. ) | |
| ) | |
| JAY DEE PFANNENSTIEL, GOLDEN ) | MEMORANDUM OPINION |
| GROWTH ENTERPRISES COMPANY, ) | |
| ) | |
| Defendants. ) | |

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR - 4 2001

CLERK

This matter was tried to the Court on February 27, 2001. The Court has considered the pleadings, trial testimony, and exhibits. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law:

**I.  FINDINGS OF FACT**

This is an action brought by the United States to reduce to judgment Jay Dee Pfannenstiel's unpaid federal income tax assessments, to set aside as fraudulent his conveyance of real property to Ms. Lori Herrera (a/k/a Lori Silva), and to foreclose its tax liens on the property. The real property is located at 209 Dee Ann Street in Gallup, McKinley County, New Mexico, 87301, described as:

> Lot Three (3) of subdivision of Tract Three (3), Rolling Hills Unit 6 Annexation, as the same is shown and designated on the map of said Subdivision, filed in the Office of the County clerk of McKinley County, New Mexico, on August 18, 1982.



The property was originally owned by the defendant's mother. On March 16, 1983, a Warranty Deed was recorded with the McKinley County Clerk conveying the property to the defendant. On June 15, 1984, the defendant conveyed the property to Lori Herrera. At the time of the conveyance he owed the Government federal income taxes for 1983 and 1984. Defendant admits the transfer to Ms. Herrera was not supported by any consideration.

Ms. Herrera was acquainted with the defendant though her ex-boyfriend, Walter Cergnul. According to the McKinley County Clerk's records, Ms. Herrera conveyed the property by Warranty Deed to Golden Growth Enterprises Company in 1984. There is no evidence this conveyance was supported by any consideration. According to her testimony, she does not remember receiving the property from the defendant, conveying it to Golden Growth Enterprises Company, or signing the deeds.

Defendant has not filed a federal income tax return since 1982. On May 4, 1992, a delegate of the Secretary of the Treasury entered assessments against the defendant. The amount of the original assessments is set forth in Exhibit 28a, and for each year is as follows:

| Prd. End  | Tax        | Penalties  | Interest   |
|-----------|------------|------------|------------|
| 12-31-83  | $ 4,420.00 | $ 4,555.76 | $ 7,371.90 |
| 12-31-84  | $ 4,849.00 | $ 4,375.53 | $ 2,859.53 |
| 12-31-85  | $ 5,112.00 | $ 4,026.75 | $ 5,499.36 |
| 12-31-86  | $ 5,388.00 | $ 3,753.62 | $ 4,694.07 |
| 12-31-87  | $ 4,907.00 | $ 3,059.10 | $ 3,302.85 |
| 12-31-88  | $ 5,138.00 | $ 1,870.00 | $ 2,468.29 |

The I.R.S. mailed a "Notice of Demand for Payment of the Assessment" to the defendant on May 4, 1992. Defendant returned the notice, claiming it was improperly addressed because it used a zip code. The amount due as of February 27, 2001, is $174,417.19. Additional interest will continue to accrue as provided by law.

On December 21, 1992, Notices of Federal Tax Lien were filed against the defendant with the McKinley County Clerk in Gallup, New Mexico. On April 28, 1994, a Notice of Federal Tax Lien was filed against Golden Growth Enterprises Co. ("as nominee for Jay Dee Pfannenstiel"). There is no evidence of any outstanding claims against the property. The Government's liens on the property are not subordinate to any other interests.

Defendant admits he transferred the property to Ms. Herrera to protect it from claims. While title to the property is held by Golden Growth Enterprises Company, at trial the defendant passionately asserted his ownership of the property, claiming it was "all that I have." The defendant has lived on, and derived profit from, the property since the 1970's. Defendant conducts a storage rental business on the property called "Zuni Self Storage," receiving and keeping all rental payments. He has never paid rent for use or occupancy of the property. Defendant's automobile is registered as belonging to Golden Growth Enterprises Company. There is no evidence Golden

Growth Enterprises Company even exists. The corporation is allegedly located in the Turk and Caicos Islands. However, when summons was sent to Golden Growth Enterprises Company in those islands, it was returned as undeliverable. Subsequently, service on Golden Growth was effected by service of the summons and the complaint on the defendant Pfannenstiel. In view of the Court's findings of fact, the Court finds that Golden Growth Enterprises Company is the alter ego of the defendant Pfannenstiel, and the Court has jurisdiction over both the defendant Pfannenstiel and the defendant Golden Growth Enterprises Company. The Court finds Golden Growth is in default and default judgment will be entered against said defendant.

Defendant's use of the property did not change after it was transferred to Ms. Herrera, nor did his use change after Ms. Herrera's alleged transfer of the property to Golden Growth. Defendant continued to make the mortgage payments on the property to Gallup Federal Savings and Loan Association (GFSL). He also signed for the paid note and release of mortgage at GFSL in 1988. Utilities and property taxes for the property are paid by the defendant.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. §§ 7401, 7402, 7403.

In a previous order, the Court granted the Government's motion for partial summary judgment regarding the income tax assessments (Filing No. 120). The Court held the Notices of Deficiency were properly sent. *Id.* As a result, the defendant was "barred from challenging the assessment except by payment of the tax and claim of refund." *Id.*

At trial, and in his briefs to the Court, the defendant challenges the validity and constitutionality of the assessments and the federal income tax in general. The defendant's chief argument is that the Court lacks subject matter jurisdiction over this matter because he is not a "taxpayer" within the meaning of the Internal Revenue Code. He argues that because he is not a taxpayer, Title 26 does not apply to him. His assertions relate to the validity of the assessments. As the Court has ordered, the assessments cannot be challenged.

In addition, the defendant's claim that he is not a taxpayer, and his related jurisdictional arguments, are meritless. The United States Court of Appeals for the Tenth Circuit in *Lonsdale v. United States* held that the following legal arguments are lacking in merit and are *patently frivolous*:

> (1) individuals ("free born, white, preamble, sovereign, natural, individual common law 'de jure' citizens of a state, etc.") are not "persons" subject to taxation under the Internal Revenue code; (2) the authority of the United States is confined to the District of Columbia; (3) the income tax is a direct tax which is invalid absent apportionment,

> and Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, modified, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), is authority for that and other arguments against the government's power to impose income taxes on individuals; (4) the Sixteenth Amendment to the Constitution is either invalid or applies only to corporations; (5) wages are not income; (6) the income tax is voluntary; (7) no statutory authority exists for imposing an income tax on individuals; (8) the term "income" as used in the tax statutes is unconstitutionally vague and indefinite; (9) individuals are not required to file tax returns fully reporting their income; and (10) the Anti-Injunction Act is invalid. To this short list of rejected tax protester arguments we now add as equally meritless the additional arguments made herein that (11) the Commissioner of Internal Revenue and employees of the Internal Revenue Service have no power or authority to administer the Internal Revenue laws, including power to issue summons, liens and levies, because of invalid or nonexistent delegations of authority, lack of publication of delegations of authority in the Federal Register, violations of the Paperwork Reduction Act, and violations of the Administrative Procedure Act, including the Freedom of Information Act; and (12) tax forms, including 1040, 1040A, 1040EZ and other reporting forms, are invalid because they have not been published in the Federal Register.

*Lonsdale v. U.S.*, 919 F.2d 1440, 1448 (10th Cir. 1990).

Accordingly, we find the defendant's arguments to be without merit and patently frivolous. The February 15, 2001, memorandum opinion explained that the only issues remaining for trial were the validity of the tax liens and whether a relationship exists

between Pfannenstiel and Golden Growth Enterprises Company (Filing No. 119).

### Tax Lien

Section 6321 of the Internal Revenue Code provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.  If an assessment is made, notice is given, and the taxpayer fails or refuses to pay his federal taxes, a lien then attaches to his personal and real property.  *Glass City Bank v. United States*, 326 U.S. 265, 267-268, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945).  The lien continues until it is satisfied or lapses.  26 U.S.C. § 6322.

In this case, an assessment was made and the defendant received notice.  The defendant failed to pay the outstanding federal income taxes.  Accordingly, a lien arose on the defendant's personal and real property.  The Government filed Notices of Federal Tax Lien against the defendant and Golden Growth Enterprises Company with the McKinley County Clerk in Gallup, New Mexico.  Defendant does not challenge the adequacy of notice, whether a lien arose under § 6321, or whether the lien was properly filed.  He instead raises the same tax-protestor

arguments the Court has already declared are meritless and frivolous. The Government's tax lien has not been satisfied, nor is there any evidence it has lapsed. The evidence establishes, and the Court finds, the Government is entitled to judgment in the amount of $174,417.19, plus interest from and after February 27, 2001, as provided by law.

### Conveyance

The Government asks the Court to set aside the defendant's conveyance of property to Ms. Herrera, and to void Ms. Herrera's subsequent transfer of the property to Golden Growth Enterprises Company. Whether these conveyances can be set aside presents a question of state law. *United States v. Christensen*, 751 F.Supp. 1532, 1536 (D.Utah 1990). Under New Mexico law a fraudulent transfer of real property can be avoided, or set aside. N.M.STAT.ANN. § 56-10-21 (Michie 2000). A transfer is considered fraudulent under New Mexico law if the transfer is made "with actual intent to hinder, delay or defraud any creditor[. . .]" N.M.STAT.ANN. § 56-10-18 (Michie 2000). In determining whether "actual intent" is present, the Court may consider whether:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;

>   (3) the transfer or obligation was disclosed or concealed;
>
>   (4) before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit;
>
>   (5) the transfer was of substantially all the debtor's assets;
>
>   (6) the debtor absconded;
>
>   (7) the debtor removed or concealed assets;
>
>   (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>   (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.*

The evidence establishes the transfer of the property to Ms. Herrera, and subsequent transfer to Golden Growth, were orchestrated by the defendant with the actual intent to defraud the Government. The defendant admitted the property transfers were arranged to protect his property from creditors. The defendant further admitted that no consideration was received in exchange for the property by either himself or Ms. Herrera. At

the time of both transfers the defendant was deficient in paying his federal income tax. The effect of the transfer was to render the defendant insolvent, as the property constituted substantially all of his assets. At trial he acknowledged as such, stating the property is "all I have." Ms. Herrera was unknowingly used by the defendant as a "middle-man" to transfer the property to Golden Growth. Golden Growth is merely the defendant's alter ego. The defendant has retained possession and control of the property at all times -- living and operating his business on it.

The evidence establishes, and the Court finds, the defendant transferred the property to Ms. Herrera with the actual intent to delay or defraud the United States Government. The transfer from the defendant to Ms. Herrera was fraudulent under N.M.STAT.ANN. § 56-10-18. The transfer will be set aside. The evidence further establishes, and the Court finds, that neither Ms. Herrera nor Golden Growth Enterprises Company took title to the property "in good faith and for a reasonably equivalent value." See N.M.STAT.ANN. § 56-10-22 (Michie 2000)(providing for the protection of transferees). The transfer from Ms. Herrera to Golden Growth is therefore void and will be set aside. *Id*.

### III. SUMMARY

The evidence establishes the United States is the holder of federal tax liens in the amount of $174,417.19, plus

interest from and after February 27, 2001, as provided by law. The conveyance of the property by Jay Dee Pfannenstiel to Lori Herrera (a/k/a Lori Silva) was fraudulent under New Mexico law and will be set aside. The conveyance from Ms. Herrera to Golden Growth Enterprises Company is likewise a nullity and will be set aside. The federal tax liens of the United States attach to the property owned by the defendant, which specifically includes the property located at 209 Dee Ann Street in Gallup, New Mexico, 87301, described as:

> Lot Three (3) of subdivision of Tract Three (3), Rolling Hills Unit 6 Annexation, as the same is shown and designated on the map of said Subdivision, filed in the Office of the County clerk of McKinley County, New Mexico, on August 18, 1982.

The United States will be granted judgment against Jay Dee Pfannenstiel in the amount of $174,417.19, plus interest from and after February 27, 2001, as provided by law. The United States will further be granted judgment foreclosing its federal tax liens on the parcel of real property described above. The United States will be authorized to sell the property at a Marshal's sale, with the proceeds to be paid as follows:

> *First*, for the costs of this action, and for the costs of this sale;
>
> *Second*, to the United States, to the extent of its federal tax liens plus any statutory additions to tax; and
>
> *Third*, the remainder, if any, is to be paid to Jay Dee Pfannenstiel.

The defendant's notice and motions for summary judgment will be denied.  All other motions pending before the Court will be denied as moot.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 2nd day of April, 2001.

BY THE COURT:

LYLE E. STROM, Senior Judge
United States District Court